UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES BARBER, individually and as
Next Friend of J.B., a minor,

       Plaintiff,                             Case No. 1:14-cv-32

v.                                               HON. JANET T. NEFF

JAMES MILLER,

       Defendant.
_____/

## OPINION

Plaintiff James Barber filed this case pursuant to 42 U.S.C. § 1983 against Defendant James Miller, a Child Protective Services (CPS) worker, alleging constitutional violations related to Miller's investigation of Plaintiff's suspected child abuse against his son, J.B.[1] Pending before the Court is Defendant's Motion to Dismiss (Dkt 21). Plaintiff has filed a Response (Dkts 22, 23), and Defendant has filed a Reply (Dkt 24). Having fully considered the parties' briefs and the record, the Court concludes that oral argument is unnecessary to resolve the pending motion. *See* W.D. Mich. LCivR 7.2(d). The Court grants Defendant's Motion to Dismiss.

### I. Factual Background[2]

Plaintiff James Barber is the biological father and legal guardian of J.B., a minor. He filed this action against Defendant James Miller, a social worker for the Michigan Department of Human

---

[1] Plaintiff Barber filed this case on behalf of himself and as next friend of J.B.; this opinion refers to "Plaintiff" in the singular as does "Plaintiff's Response" despite any references in the complaint to "Plaintiff J.B." Plaintiff sues Miller in his individual capacity only.

[2] The facts are set forth from the parties' agreed-upon recitation of the facts, except as noted.

Services CPS unit in Muskegon County, after Miller interviewed and "seized" J.B. without obtaining parental consent from Plaintiff or J.B.'s mother and without a warrant, based on a child neglect report against Plaintiff, which Plaintiff alleges was false.

Plaintiff alleges that on or about January 19, 2011, a member of his family reported to CPS that he was neglecting his son, J.B. On January 20, 2011, Defendant interviewed J.B. at his elementary school without obtaining parental consent and without a warrant. That same day, Plaintiff informed Defendant that Plaintiff consumed marihuana pursuant to MICH. COMP. LAWS § 333.26424 and lawfully consumed pain medications prescribed to him by a physician. On January 24, 2011, Defendant interviewed Mary Lou Buttis, J.B.'s paternal grandmother. Plaintiff alleges that Defendant inaccurately reported the statements made by Ms. Buttis in his report.

On January 26, 2011, Defendant again interviewed J.B. at school without parental consent and without a warrant. The next day Plaintiff again informed Defendant that Plaintiff lawfully consumed marihuana and prescription medications. On January 28, 2011, nine days after the initial report, Defendant participated in a staff meeting where safety concerns were discussed, including obtaining a pick-up order for J.B. On Friday, January 28, 2011, Defendant attested to a petition and obtained a pickup order for J.B. The order was signed by Judge John C. Ruck at 6:09 p.m. (Order, Def. Mot., Ex. 1).

On Monday, January 31, 2011, Defendant picked up/seized J.B. from his elementary school without notification to Plaintiff pursuant to the court order. On February 1, 2011, a hearing was held before a family court referee with no resolution. The hearing did not continue the following day

because of a snow storm. The hearing was concluded on February 3, 2011. Following the hearing, J. B. was returned to Plaintiff's custody.[3]

Plaintiff alleges that Defendant presented false and misleading information to the family court referee in obtaining the pick-up order for J.B., such as that Plaintiff has a history of brandishing a weapon in public and domestic violence, he threatened to put a bullet in a process server, he was violating a court order to allow J.B.'s mother visitation, and he drives with his son while intoxicated (*see* FAC ¶ 31).

Plaintiff alleges that he and J.B. enjoy an intimate, close relationship with each other, and throughout the life of J.B., J.B. has resided in the household of Plaintiff and has benefitted from his guidance, love, and affection. Additionally, after the state court proceedings were closed, a social worker from Muskegon County CPS interviewed Plaintiff on or about February 14, 2012 and made inquiries concerning J.B. and Plaintiff, suggesting an ongoing interest into their familial affairs.

Plaintiff's First Amended Complaint (FAC) (Dkt 18) alleges five counts, four of which remain pending.[4] Counts 1 and 2 allege unreasonable seizure under the Fourth Amendment: Count 1, based on an Defendant's interview of J.B. at his elementary school on January 20, 2011, and Count 2, based on Defendant's removal of J.B. from his school on January 31, 2011. Count 4 alleges interference with familial rights under the First Amendment (association) and under the

---

[3]The family court referee found there was probable cause to support one or more of the allegations in the petition. The Order after the Preliminary Hearing released J.B. to Plaintiff's custody under the supervision of the Department of Human Services and subject to specific conditions, including drug testing for Plaintiff (*see* Order, Def. Mot., Ex. 2). Plaintiff objects to the inclusion of these additional facts, but he does not contest the Order, wherein these facts are expressly stated.

[4]The FAC reflects that Plaintiff has dismissed Count 3.

3

Fourteenth Amendment (substantive due process) based upon Miller's removal of J.B. from Plaintiff's custody pursuant to a court order. Count 5 seeks a declaratory judgment that MICH. COMP. LAWS § 722.628(8) violates the Fourth Amendment and is facially unconstitutional (*see* Pl. Resp., Dkt 22 at 1).

## II. Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes the court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing FED. R. CIV. P. 10(c)). The court may also consider documents referred to in the pleadings that are integral to the claims, as well as matters of public record, without converting a motion to dismiss into one for summary judgment. *Id.*; *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).[5]

To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

---

[5]The Court will thus consider the family court orders and other public documents submitted by the parties as part of the pleadings for purposes of this Motion. However, even if the public documents submitted by Plaintiff were deemed to convert the Motion to one for summary judgment, the result would be the same because the arguments do not hinge on disputed issues of material fact.

556 U.S. 662, 678 (2009).  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

### III.  Analysis

Defendant moves for dismissal of Plaintiff's claims of constitutional violations under the First, Fourth and Fourteenth Amendments (Counts 1, 2 and 4) on the grounds that Defendant is entitled to either absolute or qualified immunity.  Concerning Count 5, Defendant argues that Plaintiff has not demonstrated separate standing supporting declaratory relief in connection with MICH. COMP. LAWS § 722.628(8), and the statute does not violate the Fourth Amendment.  Alternatively, Defendant urges the Court to decline to exercise jurisdiction over Plaintiff's request for a declaratory judgment that MICH. COMP. LAWS § 722.628(8) is unconstitutional.

### A.  Counts 2 and 4

In Count 2, Plaintiff alleges that Defendant violated the Fourth Amendment prohibition on unreasonable seizures where he "presented false and misleading information to a Family Division referee of the Muskegon County Circuit Court [ ... ] on January 28, 2011" that ultimately resulted in the pick-up order by that court and the removal of J.B. from Plaintiff's custody (FAC ¶¶ 30-36).

Defendant argues that he is entitled to absolute immunity with respect to these claims where the statements were made in his role as a legal advocate, and immunity applies regardless whether the alleged false and misleading statements were intentional.  Further, Defendant enjoys at least qualified immunity with respect to the pick-up order.

The defense of absolute immunity applies to "'officials whose special functions or constitutional status requires complete protection from suit ….'" *Dean v. Byerley*, 354 F.3d 540, 554 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)). "[A]bsolute immunity provides a shield from liability for acts performed erroneously, even if alleged to have been done maliciously or corruptly." *Dean*, 354 F.3d at 554. Additionally, "[g]overnment officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (citations and quotations omitted).

The Sixth Circuit Court of Appeals specifically addressed governmental immunity with respect to social workers in *Pittman v. Cuyahoga County Department of Children and Family Services*, 640 F.3d 716, 724 (6th Cir. 2011):

> "[U]nder certain circumstances, social workers are entitled to absolute immunity." *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000) (en banc). The scope of this immunity is akin to the scope of absolute prosecutorial immunity, *id.*, which applies to conduct "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). As this Court previously has described:
>
> > "The analytical key to prosecutorial immunity ... is *advocacy*—whether the actions in question are those of an advocate. *See Buckley* [ *v. Fitzsimmons*], 509 U.S. [259,] 273–74 [113 S. Ct. 2606, 125 L. Ed.2d 209] [ (1993)]; *Kalina* [ *v. Fletcher*], 522 U.S. [118,] 125 [118 S. Ct. 502, 139 L. Ed. 2d 471] [ (1997)]; *Pusey* [ *v. City of Youngstown*], 11 F.3d [652,] 658 [(6th Cir. 1993)]. By analogy, social workers are absolutely immune only when they are acting in their capacity as *legal advocates*—initiating court actions or testifying under oath—not when they are performing administrative, investigative, or other functions. The case before us turns on whether the actions of which [the plaintiff] complains were taken by [the defendant social worker] *in her capacity as a legal advocate*."

*Pittman*, 640 F.3d at 724 (quoting *Holloway*, 220 F.3d at 775).

*Pittman* is controlling precedent and requires the dismissal of Counts 2 and 4 as follows. To the extent Plaintiff urges this Court to rule to the contrary or otherwise prompt the Sixth Circuit to revisit its rulings in *Pittman*, the Court sees no legitimate basis for calling into question the Sixth Circuit's precedent in *Pittman* on the record before the Court.

1. Absolute Immunity

First, Defendant is absolutely immune as to Plaintiff's claim that he violated the Fourth Amendment in relation to obtaining the pick-up order. Defendant was acting in the role of a legal advocate in filing the complaint, and he is therefore entitled to absolute immunity. "'[F]amily service workers [are] absolutely immune from liability in filing [a] juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings.'" *Pittman*, 640 F.3d at 724-25 (citation omitted). The Sixth Circuit has recognized the need to allow a family service worker to perform the necessary tasks to "'protect the health and well-being of [] children'" "'without the worry of intimidation and harassment from dissatisfied parents.'" *Id.* at 725 (citations omitted). Thus, for instance, the "submission of [an] affidavit for publication [is] conduct intimately associated with the judicial process and [] qualifies for absolute immunity." *Id.*

It does not matter that Plaintiff alleges that Defendant's statements in the complaint or to the referee were misrepresentations or false. Absolute immunity applies even where it is alleged that the defendant social worker made intentional misrepresentations to a court. *See Pittman*, 640 F.3d at 725-26. "[P]rosecutorial immunity applies 'so long as the general nature of the action in question is part of the normal duties of a prosecutor,' even when that immunity 'bar[s] § 1983 suits arising out of even unquestionably illegal or improper conduct by the prosecutor.'" *Id.* at 725 (quoting

7

*Cady v. Arenac Cnty.*, 574 F.3d 334, 360 (6th Cir. 2009)). Defendant is absolutely immune as to Plaintiff's claim that he violated the Fourth Amendment in relation to obtaining the pick-up order.

2. Qualified Immunity

"The doctrine of qualified immunity protects 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pittman*, 640 F.3d at 727 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The determination of qualified immunity involves a two-step analysis. First, the court must determine whether the plaintiff has alleged facts which, viewed in the light most favorable to him, show that the defendant-official's conduct violated a constitutionally protected right. *Id.* Second, the court must determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right. *Id.* The court has discretion to address either prong first in the analysis. *Id.*

Defendant argues that he is entitled to at least qualified immunity on the claim he seized J.B. in violation of the Fourth and Fourteenth amendments after obtaining the pick-up order. The Court agrees.

With regard to a Fourth Amendment violation, Plaintiff asserts that Defendant "knew that the resulting seizure of J.B. was without a valid warrant, without probable cause, and without exigent circumstances" (FAC ¶ 35). However, as Defendant observes, because Defendant acted pursuant to an order of the court, it cannot be said that his actions violated any clearly established constitutional right, and he is entitled to qualified immunity. Defendant took custody of J.B. on January 31, 2011, pursuant to the pick-up order from the family court, signed by the referee.

Plaintiff points to no deficiency in the court order authorizing the pick-up of J.B. and has failed to show any constitutional violation with regard to the pick-up of J.B. *See Van Buren v. Crawford Cnty.*, No. 13–14565, 2014 WL 2217016, at *5-6 (E.D. Mich. May 29, 2014) (citing MICH. CT. R. 3.963(A)(1)) (finding no Fourth Amendment violation stemming from warrantless entry into the father's apartment to take custody of his two-year old son because the entry was pursuant to a court order, which satisfied all of the requirements of the Warrant Clause).

Plaintiff's general assertion that "[t]he Sixth Circuit has already ruled that the warrantless seizure of children by social workers is a clearly established violation of the Fourth Amendment" is disingenuous (Pl. Resp., Dkt 23 at 8, citing *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 699 (6th Cir. 2013)). *Kovacic* is clearly distinguishable because it involved the warrantless removal of children from their *homes* pursuant to a standing juvenile court order, without any advance consideration of the *specific* case or order by the court. *Id.* at 692, 699 (emphasis added). Plaintiff advances no legitimate argument or authority to establish a constitutional violation with respect to the pick-up of J.B. on January 31, 2011 from his public school pursuant to the family court order.

Likewise, with regard to Count 4, Defendant did not interfere with J.B.'s rights to familial integrity, and is entitled to immunity. Plaintiff asserts that Defendant interfered with Plaintiff's and J.B.'s First and Fourteenth Amendment rights to familial integrity "by providing false information to obtain a court order to remove Plaintiff J.B. from the lawful custody of Plaintiff James Barber" (FAC ¶ 49). Plaintiff claims that Defendant's "conduct injured [them] by causing a denial of their ability to cohabitate for four (4) days, creating significant emotional turmoil, anxiety, stress and

9

unnecessary and unreasonable expenses to comply with court orders, attorney fees, and other incidental costs" (*id.* ¶ 54).

Having determined that Defendant is entitled to absolute immunity with regard to obtaining the pick-up order, the Court concludes that any Count 4 claim based on the pick-up order fails. The 4-day separation between Plaintiff and J.B. stems from the pick-up order and actions pursuant thereto. Defendant is entitled to dismissal of both Count 2 and Count 4.

### B. Count 1

In Count 1, Plaintiff alleges a § 1983 claim based on an unreasonable seizure in violation of the Fourth Amendment with regard to Defendant's interview of J.B. at school on January 20, 2011. Defendant argues that this claim fails as a matter of law because the law is not clearly established that interviewing a suspected victim of child abuse at school, without a warrant or parental consent, violates that child's Fourth Amendment rights. Thus, Defendant is entitled to qualified immunity on this claim. The Court agrees.

Government officials performing discretionary functions are protected from § 1983 liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pittman*, 640 F.3d at 727. "'A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established.'" *Kovacic*, 724 F.3d at 695 (quoting *Morrison v. Bd. of Trustees*, 583 F.3d 394, 400 (6th Cir. 2009)); *see also Pittman*, 640 F.3d at 727.

"'A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kovacic*, 724 F.3d at 698 (footnote and citation omitted). In evaluating whether a right was clearly established, the reviewing court should look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within our circuit, and finally the decisions of other circuits. *O'Malley v. City of Flint*, 652 F.3d 662, 668 (6th Cir. 2011); *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991). This standard requires the courts to examine the asserted right on a fact-specific, case-by-case basis. *O'Malley*, 652 F.3d at 668. "Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Id.* at 667.

"[A] social worker, like other state officers, is governed by the Fourth Amendment's warrant requirement." *Kovacic*, 724 F.3d at 695 (quoting *Andrews v. Hickman Cnty.*, 700 F.3d 845, 859 (6th Cir. 2012)). In *Kovacic*, *id.* at 699, the Sixth Circuit observed that it is clearly established law that a government official cannot seize children from their homes without a warrant or exigent circumstances. The Court distinguished an earlier Sixth Circuit decision, *Andrews*, 700 F.3d at 863, which held that the law on warrantless *entries* by social workers into the home for the purpose of investigation was unsettled in the Sixth Circuit at the time of the social workers' conduct in that case. *Kovacic*, 724 F.3d at 698-99. "[T]he warrantless *removal* of children from their homes [is] an area of Fourth Amendment law that is not tainted by the same 'lack of clarity' present in *Andrews*." *Id.* at 699.

Here, the issue is whether a social worker may interview a child in a public school setting regarding allegations of suspected abuse by a parent. And as Defendant points out, Plaintiff has failed to carry his burden of showing that the clearly established law prohibits a social worker from

11

such conduct. *See Camreta v. Greene*, 131 S. Ct. 2020, 2026-27 (2011) (dismissing appeal from defendant social workers regarding alleged violations of child's Fourth Amendment rights via in school interview by social worker and member of law enforcement as moot). Further, while *Andrews* and *Kovacic* make clear that at least two facets of Fourth Amendment law apply to social workers, those cases were both decided after Defendant's interview of J.B., and both dealt with entries into private residences, not a public school setting. Defendant is entitled to dismissal of Count 1.

### C. Count 5

In Count 5, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring MICH. COMP. LAWS § 722.628(8) and (9) unconstitutional to the extent they allow seizures of minor children (in a school or other institution) without parental notification and consent.

MICH. COMP. LAWS § 722.628(8) authorizes the interview of suspected victims of child abuse at school without parental consent:

> A school or other institution shall cooperate with the department during an investigation of a report of child abuse or neglect. Cooperation includes allowing access to the child without parental consent if access is determined by the department to be necessary to complete the investigation or to prevent abuse or neglect of the child. The department shall notify the person responsible for the child's health or welfare about the department's contact with the child at the time or as soon afterward as the person can be reached. The department may delay the notice if the notice would compromise the safety of the child or child's siblings or the integrity of the investigation, but only for the time 1 of those conditions exists.

Subsection 722.628(9) further provides:

> (9) If the department has contact with a child in a school, all of the following apply:
>
> (a) Before contact with the child, the department investigator shall review with the designated school staff person the department's responsibilities under this act and the investigation procedure.

>(b) After contact with the child, the department investigator shall meet with the designated school staff person and the child about the response the department will take as a result of contact with the child. The department may also meet with the designated school staff person without the child present and share additional information the investigator determines may be shared subject to the confidentiality provisions of this act.

Defendant argues that Count 5 should be dismissed because: (1) Plaintiff does not have standing to seek a declaratory ruling that § 722.628 violates the Fourth Amendment; (2) § 722.628(8) does not violate the Fourth or Fourteenth Amendments; and (3) alternatively, the Court should decline to exercise jurisdiction over Plaintiff's request for a declaratory judgment (Def. Mot., Dkt 21 at 19-31). While Defendant provides a lengthy discussion of these issues, the cases cited variously address distinct jurisdictional principles, including standing and "case or controversy" requirements under Article III of the Constitution, as well as limitations on various forms of relief sought, such as declaratory or injunctive relief.

Plaintiff provides only a cursory, partial response to the issues raised by Defendant (Pl. Resp., Dkt 23 at 12-14). Plaintiff argues that he has standing because he has shown an "injury in fact" required for Article III standing: a Fourth Amendment violation due to the warrantless interview of J.B. and his subsequent removal, under *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009). Plaintiff further argues that contrary to Defendant's arguments, the likelihood of future injury is not speculative. Plaintiff also provides brief argument on the facial invalidity of the statute, contending: "When a statute purports to avoid the Fourth Amendment requirements, it becomes facially invalid when it lacks sufficient restraint on executive discretion" (Pl. Resp. at 13).

The parties' arguments and authority provide a questionable foundation for any comprehensive legal analysis of the issues raised and the propriety of a declaratory ruling on the

constitutionality of § 722.628. Nonetheless, the Court is persuaded that Count 5 is properly dismissed based on jurisdictional principles under the circumstances presented.

Defendant argues that Plaintiff lacks standing to seek a declaratory ruling that § 722.628 is unconstitutional because Plaintiff is not in danger of sustaining some direct injury from the statute and has not established that the challenged statute will impede his or J.B.'s future action. That is, Plaintiff has provided no evidence that he has been threatened with further or repeated removals of J.B. or future proceedings in family court. Without any evidence that Plaintiff will again be subject to child protection proceedings, Plaintiff has no interest in the challenged statute greater than that of any other person. Plaintiff's mere speculation of future action against him or J.B. based on a CPS interview February 14, 2014, after the state court proceedings closed, is not "sufficiently real and immediate to show an existing controversy" (Def. Mot., Dkt 21 at 21).

"[V]arious doctrines may lead a federal judge *not* to hear [a] case." WILLIAM W. SCHWARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL (2014), Ch. 2E, *Special Jurisdictional Limitations*, § 2:4100. These include both jurisdictional and "prudential" limitations on the exercise of federal jurisdiction, such as the "case or controversy" requirement and standing to sue under Article III of the Constitution.[6] *Id.* §§ 2:4100, 2.4101, 2.4104. Plaintiff has failed to establish these jurisdictional requisites with respect to Count 5.

---

[6]These limitations are not always easy to distinguish, and the continuing vitality of at least some aspects of these principles has been placed in doubt. *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 596 n.3 (6th Cir. 2014) (citing *Susan B. Anthony List v. Driehaus*, ___ U.S. ___; 134 S. Ct. 2334, 2347 (2014) (ripeness); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S. ___, 134 S. Ct. 1377, 1386-88 (2014) (standing)).

An actual controversy must exist for a declaratory judgment to be entered. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 104 (U.S. 1983). To establish "a case or controversy" within the meaning of Article III, a plaintiff must show: (1) an "injury in fact" that is concrete and not conjectural; (2) causation, i.e., a causal connection between the injury and the defendant's conduct or omissions; and (3) redressability, a likelihood that the injury will be redressed by a favorable decision. FEDERAL CIVIL PROCEDURE BEFORE TRIAL, *supra*, § 2.4105; *Susan B. Anthony List v. Driehaus*, ___ U.S. ___; 134 S. Ct. 2334, 2341 (2014). The Supreme Court recently reiterated the injury-in-fact requirement:

> An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur."

*Driehaus*, 134 S. Ct. at 2341 (citations omitted). "The party invoking federal jurisdiction (plaintiff or removing defendant) must establish each element with the manner and degree of evidence required at the particular stage of litigation." FEDERAL CIVIL PROCEDURE BEFORE TRIAL, *supra*, § 2.4107; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Defendant cites *Golden v. Zwickler*, 394 U.S. 103 (1969), an analogous case in which the Court dismissed an action seeking to invalidate a state statute (Def. Mot., Dkt 21 at 20). In that case, "Congressman Zwickler sought a declaratory judgment that a New York statute prohibiting anonymous handbills directly pertaining to election campaigns was unconstitutional. Although Zwickler had once been convicted under the statute, he was no longer a Congressman apt to run for reelection. A unanimous Court held that because it was 'most unlikely' that Zwickler would again be subject to the statute, no case or controversy of 'sufficient immediacy and reality' was present to allow a declaratory judgment." *Lyons*, 461 U.S. at 104 (footnote omitted) (citing *Zwickler*, 394

U.S. at 109). Just as Zwickler's assertion that he could be a candidate for Congress again was inadequate evidence that this was a prospect of "'immediacy and reality,'" Plaintiff's speculation that he and/or J.B. may again be subject to inquiry under § 722.628 similarly does not provide a basis for a declaratory judgment that the statute is unconstitutional. *See Lyons*, 461 U.S. at 104 (quoting *Zwickler*, 394 U.S. at 109).

Plaintiff provides no persuasive argument to establish a jurisdictional basis for declaratory relief under the circumstances presented. Any injury is hypothetical and not real or imminent. First, this Court has found that Plaintiff has failed to state claims of constitutional violations under the Fourth Amendment on the allegations asserted in his First Amended Complaint—which undermines Plaintiff's only basis for relief in Count 5, i.e., that § 722.628 violates the Fourth Amendment. Second, concerning future injury, Plaintiff fails to show that any threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." *Driehaus*, 134 S. Ct. at 2341 (citations omitted).

Plaintiff alleges that "[a] declaration of unconstitutionality of MCL 722.628(8) and (9) pursuant to 28 U.S.C. § 2201 is necessary to protect the future interests of both Plaintiffs because Plaintiff is compelled by state law to send Plaintiff J.B. to a school and Plaintiff J.B. is compelled to attend a school" (FAC ¶ 61). Further:

> 62. A social worker from Muskegon County CPS interviewed Plaintiff James Barber on or about February 14, 2012 after the state court proceedings were closed and made inquiries concerning Plaintiff JB and Plaintiff James Barber suggesting an ongoing interest into the familial affairs of Plaintiffs.
>
> 63. Plaintiff James Barber is mandated by state law to continue sending Plaintiff JB into schooling and cannot afford private schooling thereby subjecting Plaintiff JB to the likelihood of further seizures.

(*id.* ¶¶ 62-63).

Plaintiff cites excerpts from the Forensic Interviewing Protocol established by the Governor's Task Force and mentioned in § 722.628 (Pl. Resp., Dkt 23 at 12, Ex. 2) as mandating that each county develop a protocol based on the Task Force model (*id.* at 12). Plaintiff also cites excerpts from the Model Protocol developed by the Governor's Task Force, asserting that the Protocol is "replete with references to a team approach that involves both social workers and law enforcement" (*id.* at 12-13). He references allegations in his First Amended Complaint (FAC ¶¶ 57-58) that the Michigan courts' interpretation of § 722.628 (1) precludes schools from denying a social worker access to a child before the parent is notified, and (2) permits confidential information to be provided to law enforcement. Finally, Plaintiff asserts that in the investigation of this case, he discovered that the Muskegon County CPS office refuses to follow the mandatory guidelines of the Forensic Interviewing Protocol on the advice of the Muskegon County Prosecutor's Office, which includes, but is not limited to, refusing to video/audio tape compelled interviews of children and refusing to take and maintain notes of the interviews (Pl. Resp. at 13).

Plaintiff in effect argues that his complaint allegations, along with the mandate for a county protocol (which Muskegon County does not follow) establish the likelihood of future violations of his and J.B.'s constitutional rights and, thus, alleges injury-in-fact under the statute. This Court is not so persuaded. Such evidence does not establish a threatened injury that is "certainly impending," or that there is a "'substantial risk' that the harm will occur." *See Driehaus*, 134 S. Ct. at 2341 (citations omitted).

Plaintiff has failed to establish a proper jurisdictional basis for a declaration that MICH. COMP. LAWS § 722.628 violates the Fourth Amendment. Count 5 is properly dismissed.

## IV.  Conclusion

Plaintiff has failed to show any viable claim related to Miller's investigation of suspected child abuse against J.B.  Accordingly, Defendant's Motion to Dismiss (Dkt 21) is granted.  An Order and corresponding Judgment will be entered consistent with this Opinion.  *See* FED. R. CIV. P. 58.


Dated: March  26 , 2015                             /s/ Janet T. Neff
                                                           JANET T. NEFF
                                                           United States District Judge